IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kimjaro Presley, #299377, | ) | C/A No.: 1:14-3785-BHH-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Willie Eagleton, Warden of Evans Correctional Institution, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Kimjaro Presley is an inmate at the Evans Correctional Institution of the South Carolina Department of Corrections who, through counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 17, 18].  After obtaining extensions, Petitioner filed a response on May 14, 2015. [ECF No. 23].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends Respondent's motion for summary judgment be granted.

I.    Factual Background

At his guilty plea, Petitioner acknowledged his involvement in a nine-month crime spree across state and county lines during which he and several codefendants robbed 15 businesses. Petitioner also acknowledged having robbed the occupants of a home at

1

gunpoint.    At PCR, Lexington County assistant solicitor August "Tav" Swarat, Esq., summarized the break-in as follows:

> The defendant, Mr. Hayward, and another associate, I believe Mr. McKenzie, were involved in the break in. Mr. McKenzie stayed outside, I believe. He was in the getaway car. What they were trying to do was get a vehicle to use in a bank robbery. They went in. The front door was open. I believe Mr. Presley went to the back yard where some of the children were playing during the birthday party. He herded everybody up at gunpoint, got them back in the house, then got [Victim] to give him access to her vehicle. Once they had the vehicle, they could have left, but they came back inside, tied her up and beat her in front of the children. It was very severe, put the gun to the head of the children, threatened to kill the children during the assault. They stole some weapons out of the house. They stole all their Christmas presents, then they fled and shortly thereafter, maybe within an hour, they robbed a bank about a half a mile away.

[ECF No. 17-10 at 4–5].

After being arrested by the Lexington County Sheriff's Department on June 25, 2003, Petitioner waived his right to counsel and provided a statement ("First Statement") to law enforcement confessing to having robbed some seven businesses and restaurants and providing details of his codefendants' other robberies. [ECF No. 17-10 at 67–75]. Petitioner's mother and stepfather retained Tony Dessausure, Esq., to represent him. [ECF No. 17-9 at 89:12–22]. During their initial meeting, Mr. Dessausure advised Petitioner not to give any other statements. *Id.* at 37:9–38:16. Mr. Dessausure advised the Richland and Lexington County solicitors offices he represented Petitioner and, by letter dated July 31, 2003, noted he did not want anyone talking with Petitioner, unless their conversations were directed through counsel. *Id.* at 36:2–17. Mr. Dessausure testified at some point he sent that letter to the respective county sheriff departments, as well. *Id.* at 36:18–22.

In early September 2003, unbeknownst to counsel, Petitioner requested his girlfriend Candice Cantey contact Investigator W. McDaniel ("Investigator McDaniel") of the Richland County Sheriff's Department to advise that Petitioner wanted to discuss several unsolved armed robberies and carjackings. [ECF No. 17-7 at 68:6–11; 97:14–22; 17-9 at 40:5–13; 41:14–20; 17-10 at 33]. On September 12, 2003, Petitioner met with Investigator McDaniel at the Richland County Sheriff's Department, where Petitioner provided a 16-page statement ("Second Statement") [ECF No. 17-10 at 32–48] detailing his involvement in some 11 additional robberies/carjackings. [ECF No. 17-7 at 68:14–20; 123:6–9; 17-9 at 41:20–25]. Mr. Dessausure was not notified of the interview and was not present during the meeting; rather, he became aware of the meeting two or three days later when Petitioner informed him he had "told Investigator McDaniel everything." [ECF No. 17-7 at 68:10–20]. Counsel noted at the PCR hearing that, at the time, he was unaware of several of the robberies Petitioner confessed to in the Second Statement and, therefore, did not believe he represented Petitioner on those charges when the Second Statement was given. [ECF No. 17-9 at 78:13–24].

On September 19, 2003, Petitioner and counsel met with Detective James Lorick ("Detective Lorick") at the Lexington County Sheriff's Department, at which Petitioner provided a 10-page statement ("Third Statement") [ECF No. 17-10 at 49–59] disclosing several more robberies and additional details of some of the previously-disclosed robberies. In sum, Petitioner confessed to over 47 armed robberies and was facing "close to

life plus a thousand years" in jail on all of the charges brought against him. [ECF No. 17-7 at 126:21–23; 110:15–18].

Absent any specific prosecutorial promises or plea offers, Petitioner offered to be available as a state's witness at the trial of his codefendant, John Hayward ("Hayward"). *Id.* at 63:25–64:5; 17-9 at 61:–62:9. Petitioner's testimony was unnecessary upon Hayward's guilty plea and sentence in November 2003 of 325 years in prison. *Id.* at 62:8–9; 17-9 at 85: 8–9; 17-7 at 113: 9; 98:3–8.

II.    Procedural Background

Petitioner was indicted by the Richland County grand jury in July 2003 for armed robbery [ECF No. 17-8 at 97] (2003-GS-40-5389). Petitioner was represented by Mr. Dessausure, and on November 21, 2003, waived presentment to the Richland County grand jury on 10 additional counts of armed robbery and one count of kidnapping. [ECF No. 17-7 at 13:4–14:5]. Petitioner pled guilty before the Honorable G. Thomas Cooper, Jr., Circuit Court Judge, to all the charges against him, with sentencing deferred pending resolution of charges against Heyward. *Id.* at 3–18.

On January 21, 2004, Petitioner appeared before Judge Cooper and waived presentment to the grand jury and jurisdiction on the additional counts from Lexington County, including nine counts of armed robbery, 10 counts of kidnapping, two counts of criminal conspiracy, one count of assault and battery with intent to kill ("ABWIK"), and one count of burglary first degree. *Id.* at 29:12–30:13. Additionally, the state, with counsel's consent, amended to attempted armed robbery one of the Richland County armed

robbery charges to which Petitioner had previously pled. [ECF No. 17-7 at 35:24–36:17]. Petitioner pled guilty to all the Lexington County charges against him and received the following concurrent sentences on the Richland and Lexington charges: 50 years for burglary first degree, 30 years on each of the 20 armed robbery charges, 30 years on each of the 11 kidnapping charges, 20 years for ABWIK, 20 years for attempted armed robbery, and five years for each of the two criminal conspiracy charges. *Id.* at 83–88.

Petitioner filed a timely motion to reconsider, *id.* at 90, argued by Jack B. Swerling, Esq., before Judge Cooper at a hearing on November 21, 2005. *Id.* at 91 through 17-8 at 5. Judge Cooper denied the motion to reconsider. [ECF No. 17-8 at 4].

On November 13, 2006, Petitioner, through Tara Shurling, Esq. ("PCR counsel"), filed an application for post-conviction relief ("PCR") in Richland County (2006-CP-40-06751). [ECF No. 17-8 at 24–32]. The state filed a Return and Motion to Dismiss on or about May 11, 2007, arguing the application was untimely filed pursuant to the statute of limitations in S.C. Code Ann. § 17-27-45(a). *Id.* at 34–39. The Honorable Alison Renee Lee, Circuit Court Judge, issued a Conditional Order of Dismissal on May 24, 2007, provisionally denying and dismissing the application, and allowing Petitioner 20 days within which to submit his objections to the summary dismissal. *Id.* at 45–48. PCR counsel filed a reply to the conditional order, noting Petitioner's timely motion for reconsideration stayed his time to file the PCR application such that the application was timely filed. *Id.* at 49–50.

One week after filing the Richland County PCR action, Petitioner, through PCR counsel, filed another PCR application in Lexington County on November 20, 2006 (2006-CP-32-4092) *Id.* at 6–12. The Honorable James W. Johnson, Jr., Circuit Court Judge, issued a Conditional Order of Dismissal, [*id.* at 15–17], and PCR counsel filed a reply setting forth the same argument previously filed in the Richland County action. *Id.* at 19–20. By consent order filed December 11, 2008, the Honorable R. Knox McMahon, Circuit Court Judge, ordered Petitioner's Lexington County PCR application (2006-CP-32-4092) be withdrawn to allow Petitioner to challenge the charges from both counties through the Richland County PCR application (2006-CP-40-6751). *Id.* at 21–22.

Petitioner filed an amended PCR application on March 10, 2010. *Id.* at 59–60. Petitioner and PCR counsel appeared before Judge Lee for an evidentiary hearing on March 15, 2010. [ECF No. 17-9 at 18 through 17-10 at 31]. Testifying at the hearing were Petitioner, and attorneys Dessausure, Swerling, Swarat, and Samuel Mokeba, counsel for codefendant Heyward. *Id.*

By order filed February 11, 2011, Judge Lee denied and dismissed the application with prejudice. [ECF No. 17-10 at 77–86]. On February 24, 2011, Petitioner filed a motion to alter or amend pursuant to SCRCP 59(e), requesting the PCR court reconsider its decision to deny relief or, in the alternative, issue an amended order addressing several additional issues allegedly raised at the evidentiary hearing. *Id.* at 88–93. On July 20, 2011, Judge Lee issued a "Supplemental Order" granting Petitioner's Rule 59(e) motion solely to

amend the findings of fact and conclusions of law previously set forth in the February 11, 2011, order of dismissal. *Id.* at 99–103.

Petitioner appealed from the denial of PCR on June 11, 2012. *Id.* at 105–106. PCR counsel filed a petition for writ of certiorari [ECF No. 17-1], raising the following issues:

I.       Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to negotiate a plea agreement with the State that insured that the Petitioner would receive some benefit for his cooperation with the prosecution of his co-defendants and allowed the Petitioner to make a third statement to law enforcement on September 19, 2003 without such a plea agreement in place for the Petitioner's benefit and protection?

II.      Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to clearly advise the Petitioner not to speak to the police without defense counsel being present after he was retained to represent the Petitioner where defense counsel's failure to adequately warn the Petitioner about the dangers and disadvantages of talking to law enforcement without legal counsel resulted in the Petitioner's issuance of his September 12, 2003 statement in which he incriminated himself in multiple felonies and provided valuable information to law enforcement concerning his co-defendants without the benefit of any sort of agreement with the prosecution for him to be rewarded for his cooperation.

III.     Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel neglected to explain to the Petitioner:

        (1)      The procedures available to him if he went to trial to challenge the admissibility of his statements; and

(2)    The fact that if he proceeded to trial, and unsuccessfully attacked the admissibility of his statements, he would have the right to have the ruling of the lower court reviewed by a higher court on appeal?

IV.    Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to fully advise him of the function of the grand jury and the consequences of waiving his right to grand jury presentment on all his charges and where defense counsel failed to advise the Petitioner why the State wanted to amend his waiver of grand jury presentment on one count of armed robbery during his sentencing proceeding allowing the amendment requested without his express consent?

V.    Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to properly advise the Petitioner that he would not be parole eligible under any circumstances if he pleaded guilty to the charges against him?

*Id.* at 3–4.

On August 5, 2014, the South Carolina Court of Appeals (the "Court of Appeals") issued an order denying certiorari. [ECF No. 17-3]. On September 18, 2014, the Court of Appeals denied Petitioner's petition for rehearing. [ECF Nos. 17-4, 17-5]. The remittitur issued on October 27, 2014. [ECF No. 17-6]. Petitioner filed this federal petition for a writ of habeas corpus on September 25, 2014. [ECF No. 1].

III.    Discussion

Petitioner raises the following grounds in his petition:

**Ground One:**    Did the state court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial

8

as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to negotiate a plea agreement with the State that insured that the Petitioner would receive some benefit for his cooperation with the prosecution of his co-defendants and allowed the Petitioner to make a third statement to law enforcement on September 19, 2003 without such a plea agreement in place for the Petitioner's benefit and protection?

**Ground Two:**    Did the state court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to clearly advise the Petitioner not to speak to the police without defense counsel being present after he was retained to represent the Petitioner where defense counsel's failure to adequately warn the Petitioner about the dangers and disadvantages of talking to law enforcement without legal counsel resulted in the Petitioner's issuance of his September 12, 2003 statement in which he incriminated himself in multiple felonies and provided valuable information to law enforcement concerning his co-defendants without the benefit of any sort of agreement with the prosecution for him to be rewarded for his cooperation.

**Ground Three:**    Did the State court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel neglected to explain to Petitioner: (1) The procedures available to him if he went to trial to challenge the admissibility of his statements; and 2) The fact that if he proceeded to trial, and unsuccessfully attached the admissibility of his statements, he would have the right to have the ruling of the lower court reviewed by a higher court on appeal?

**Ground Four:**    Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S.

Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to fully advise him of the function of the grand jury and the consequences of waiving his right to grand jury presentment on all charges and where defense counsel failed to advise the Petitioner why the State wanted to amend his waiver of grand jury presentment on one count of armed robbery during his sentencing proceeding allowing the amendment requested without his express consent?

**Ground Five:**    Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 13 of the South Carolina Constitution, had been violated in that defense counsel failed to properly advise the Petitioner that he would not be parole eligible under any circumstances if he pleaded guilty to the charges against him?

[ECF No. 1-2].

A.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

B.    Habeas Corpus Standard of Review

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

C.     Analysis: Merits Review

1.     Ground One

In Ground One, Petitioner argues the state erred in denying him PCR on his ineffective assistance of counsel PCR claim because trial counsel (1) failed to negotiate a plea agreement for his cooperation; and (2) allowed Petitioner to make the Third Statement to law enforcement without a plea agreement.   In support, Petitioner provides the following:

> After defense counsel was informed that the Petitioner had given the September 12, 2003 statement, he arranged for the Petitioner to give another statement to the Lexington County Sheriff's Department on September 19, 2003. See App. pp. 423-433. In this statement, the Petitioner provided further detailed information concerning his involvement, and that of his co-defendants, in most of the robberies he had previously admitted his involvement to Investigator McDaniels in his September 12, 2003 statement. See App. pp. 423-433. Defense counsel testified that there were no agreements with the State at the time the Petitioner gave this statement. When asked why there was no agreement reached prior to the statement being given, defense counsel testified that the Petitioner has lost virtually all of his leverage and bargaining power by giving the statement to Investigator McDaniels. He testified that he was just "cleaning up a mess" at that point. It is apparent from his testimony however, that he never advised his client that by giving a third *counseled* statement on September 19th he would probably waive any agreement he had for the exclusion of his September 12th statement based on the failure of law enforcement to contact defense counsel before interviewing the Petitioner. App. p. 289, l. 13, p. 300, l. 19.

> The Petitioner's statement led to additional charges against co-defendant John Hayward. Prior to Hayward's trial, the Petitioner waived grand jury presentment and pleaded guilty to numerous Richland County charges. While the Petitioner was prepared to testify against Hayward, Hayward pleaded guilty "at the very last minute." See App. p. 39, ll. 17-18. (statement by Assistant Solicitor Pellizzari). At the Petitioner's evidentiary hearing, Hayward's plea attorney, Samuel Mokeba, testified before the PCR Court that the Petitioner's assistance with the State might have been the turning point for Hayward's decision to plead guilty.

12

Respondent argues the PCR court was correct in finding counsel was not ineffective for advising Petitioner to make the Third Statement to law enforcement without first securing a plea agreement from the state. Petitioner had previously provided law enforcement with the First and Second Statements, after waiving his right to counsel, confessing to having participated in some 20 armed robberies/carjackings. At the start of the September 19th meeting, Detective Lorick noted the "interview [was convened] at the request of [Petitioner] and [Petitioner's] attorney" and "[made] it clear that [Petitioner had] been made no promises" in exchange for the statement he was about to give. [ECF No. 17-10 at 49].

Petitioner testified at PCR he gave the Third Statement because he "was supposed to have cleared the record, like to clear the police record, reports of crimes that [he] had known about that [the police] didn't." [ECF No. 17-9 at 108:3–6]. When asked if counsel had advised him he could challenge the admissibility of the Second Statement at trial, would he have given the Third Statement, and Petitioner stated, "No, I don't believe so." *Id.* at 109:7–15.

Mr. Dessausure testified he viewed Petitioner's Third Statement as "damage control" considering the evidence stacked against Petitioner, to wit: two prior statements confessing to some 20 armed robberies; the absence of any plea offers from Lexington County to Petitioner (aside from avoiding other additional offenses such as relating to each individual victim); and only a concession from Richland County to recommend concurrent sentences on two of the charges. Counsel testified he believed at the time of the Third

Statement, "based off the two previous statements that [Petitioner] had given, [he] thought [the state] had enough ammunition to really hurt [Petitioner]," so counsel believed they "needed to come forward and try to work with the prosecution, the investigators as much as possible . . . in hopes of trying to get [some benefit] down the road." *Id*. at 44:8–21. Counsel stated "at that point, [Petitioner] had given away three-fourths of the farm" and the state "had enough information . . . to prosecute [Petitioner] for twenty . . . offenses so that he could possibly serve the rest of his life in jail with just the information they [already] had" prior to Petitioner's Third Statement. *Id.* at 45:13–20.

Counsel stated he "was just trying to do [his] best to clean [] up" "a mess" created by Petitioner's First and Second Statements. *Id.* at 46:4–8; 52:25–53:1. Counsel said he "did what [he] thought was in Petitioner's] best interest" by advising Petitioner to give the Third Statement, which "at that time" counsel believed was for Petitioner to "give that additional statement, to work with law enforcement, to work with the prosecution in exchange for some hoping and praying somewhere down the road that [Petitioner] would get some type of deal" from the prosecution. *Id.* at 55:13–19.

Swarat testified at PCR that counsel "did an excellent job" "trying to get [him] to agree to any concessions possible" on Petitioner's behalf during negotiations, but said he "Look, it's nothing personal against you. I just don't like what your client did, and I am not willing to concede to anything." [ECF No. 17-10 at 5:14–25]. Swarat stated "there wasn't any agreement on ceiling for the charges on [Petitioner], only that [the state] would relay [Petitioner's] cooperation" to the sentencing judge and the state would not object to

concurrent sentences. He also noted counsel "broached [the subject]" of Petitioner receiving a beneficial offer for his cooperation "on many occasions," but said he generally refused to engage in those discussions with counsel. *Id*. at 10: 20–11:2. The plea transcript itself confirms no negotiations were extended to Petitioner during the pendency of the charges. [ECF No. 17-7 at 25:2–4]. Swarat advised the judge Petitioner had cooperated with law enforcement in giving the statements, [*id.* at 56:14–19], but noted Petitioner was "absolutely promised nothing" from Lexington County prosecutors with regards to a negotiated or recommended sentence, [*id.* at 56:20]. Richland County assistant solicitor Dana Pellizzari likewise noted at the plea hearing Petitioner was very cooperative in assisting the state in its investigation. *Id*. at 42:8–20. During mitigation, counsel noted on the record: "I have explained to him an 85%. I have explained to him no parole sentences to the offenses. I've explained to him as well hand of one, hand of all and that there are no guarantees with this plea." *Id*. at 64:13–18.

In its supplemental order, the PCR court found counsel was not ineffective for not securing a plea agreement before allowing Petitioner to make the Third Statement. The court noted counsel executed an appropriate strategy is advising Petitioner to cooperate by giving the Third Statement in the hopes of obtaining a beneficial offer at some future time; the court noted the strategy was reasonable in light of the fact that the state had enough incriminating evidence with Petitioner's First Statement that would justify a 50-year sentence, and with the addition of the evidence contained in the Second Statement, Petitioner was facing a life sentence. [ECF No. 17-10 at 102].

The undersigned's review of the record supports the PCR court's finding that counsel articulated a valid and appropriate strategy in advising Petitioner to cooperate with law enforcement in a final effort to secure some beneficial offer from the state. By the time of the Third Statement, Petitioner had already provided police with full confessions to 20 crimes for which he could have received a life sentence, and he had little to lose by attempting to cooperate for some benefit. "Courts must be wary of second-guessing counsel's trial tactics; and where counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel." *Whitehead v. State*, 417 S.E.2d 529, 531 (S.C. 1992). Accordingly, the court finds the PCR court correctly found counsel was not ineffective as to Ground One.

The court notes the PCR court's finding that Petitioner lacked credibility and that, but for counsel's alleged deficiency, he would not have pled guilty. The PCR court also found Petitioner failed to prove resulting prejudice, finding no reasonable probability that, but for Petitioner's Third Statement to law enforcement, he would not have pled, but rather would have gone to trial to face each of the 18 counts of armed robbery to which he had fully confessed. Even if Petitioner had been successful in the suppression of the Second Statement at trial, he would have faced armed robbery charges stemming from seven incidents to which he confessed in his First Statement. Petitioner has not demonstrated that, but for the Third Statement, there is a reasonable likelihood he would be serving less than his current 50-year sentence.

2.     Ground Two

In Ground Two, Petitioner argues the state erred in denying his ineffective assistance of counsel PCR claim because counsel failed to clearly advise him not to speak further to the police without counsel being present, resulting in Petitioner giving his Second Statement without benefit.

At PCR, Petitioner asserts he was never advised by counsel not to make any further statements to police or that any additional information he had could possibly be used to obtain some sort of concessions to his advantage in plea negotiations. Petitioner stated he never would have given further statements to law enforcement without a plea agreement in place had he known that additional information he had could have been used by counsel to enhance his chances of negotiating a more favorable plea bargain. *Id*. at 91:5–93:3.

At PCR, counsel testified that at his first meeting with Petitioner, he advised him to not give any more statements until they saw "what's out there first." *Id*. at 37:12–17. When asked if he explained to Petitioner that any information he had available disclose to law enforcement about other crimes could be used as leverage in the plea bargain process, defense counsel stated, "I'm sure I did. I can't give you any specific date, but I'm sure I did." *Id*. at 37:9–38:6. Petitioner argues counsel never advised him that by giving the counseled Third Statement, he would waive any argument he had for the exclusion of his uncounseled Second Statement. *Id.* at 54:12–55:19.

Petitioner argues his Third Statement led to additional charges against Hayward. Petitioner was prepared to testify against Hayward, but learned at his sentencing that

17

Hayward pled guilty at the very last minute. Pellizarri acknowledged Petitioner had been cooperative with law enforcement and was going to be a witness for the state had Hayward gone to trial. [ECF No. 17-7 at 42:8–20]. Hayward's attorney Mokeba testified at PCR that Petitioner's assistance with the state might have been the turning point for Hayward's decision to plead guilty, as Petitioner's statements "actually opened the case, opened up the case." [ECF No. 17-9 at 83:15–84:19]. Petitioner submits counsel's errors and omissions resulted in his having spent the only currency he had—information on Hayward—without any agreement that he be rewarded for it, with Swarat informing the plea court that "He is absolutely promised nothing. If you give him life in prison, that doesn't go beyond any agreement I had with him. I just promised him I would tell the Court about any cooperation he gave." [ECF No. 17-7 at 56: 20–24].

Respondent argues the PCR court was correct in finding counsel was not ineffective in advising Petitioner not to give any statements to law enforcement after being retained in the matter where Petitioner voluntarily initiated discussions with police, waived his right to counsel and provided the Second Statement without counsel's knowledge. The record refutes Petitioner's contention, as it appears Mr. Dessausure specifically advised Petitioner to not make any additional statements to law enforcement, but Petitioner's own noncompliance with that advice resulted in the Second Statement.

By the time Mr. Dessausure was retained to represent Petitioner "maybe . . . two or three days" after being arrested [ECF No. 17-9 at 89:16–22], Petitioner had already given the First Statement, admitting his involvement in seven robberies and detailing other

crimes by his codefendants. *Id.* at 35: 6–17; 17-10 at 67–75.

At his first meeting with Petitioner, counsel became aware of Petitioner's First Statement and specifically advised Petitioner "not to give any statements" to law enforcement from that point on, explaining to Petitioner that any additional information he had concerning other crimes could be used as potential leverage in the plea bargaining process. [ECF No. 17-9 at 37:9–22]. Counsel told Petitioner that "timing was of the essence," because "if [they] were going to give statements, it had to be done at the right time so he could receive some type of benefit or some type of bargain as a result of giving those statements." *Id.* at 38:1–6. Counsel followed up his advice by letter dated July 31, 2003, advising the Lexington and Richland county solicitors' offices that he was Petitioner's attorney on the charges and requested that nobody talk with Petitioner unless "they were coming through [counsel]." *Id.* at 36:6–17.

Petitioner had his girlfriend contact Investigator McDaniels—whom he previously knew through a basketball team—and coordinate a meeting with him on September 12, 2003, unbeknownst to counsel. [ECF No. 17-10 at 33]. Petitioner was advised of his rights and signed a waiver of rights form, *id.* at 32, and thereafter provided the 16-page Second Statement [*id.* at 32–48] confessing to, and detailing his involvement in 11 additional robberies/carjackings. [ECF No. 17-7 at 68:14–20; 123:6–9; 17-9 at 41:18–25]. Petitioner stated his reason for wanting to speak with Investigator McDaniel about the crimes was "to clear [his] conscience and to get all of [the] crimes off [of his] chest." [ECF No. 17-10 at 33]. At the PCR hearing. Petitioner affirmed he had voluntarily and independently

contacted Investigator McDaniel to "unburden [his] soul" about the crimes. [ECF No. 17-9 at 107:12–17].

Mr. Dessausure said he was "very surprised" when he found out Petitioner had independently contacted McDaniels to request a meeting, and said he was never notified that the interview was being convened or that a statement was being taken from Petitioner. [ECF No. 17-9 at 40:5–8; 41:4–7]. Rather, counsel said he became aware of the meeting "two or three days" later when Petitioner informed him he had "told Investigator McDaniel everything." [ECF No. 17-7 at 68:10–20]. Counsel said it was his understanding:

> Petitioner knew Mr. McDaniels because he had been on a basketball team or something like that, and he did not request my presence.   He wanted to talk to Investigator McDaniels because God told him to do so, and he felt comfortable with Investigator McDaniels because he had known him from a Little League basketball team, some prior basketball team that he was on.

[ECF No. 17-9 at 41:18–25]. Counsel noted he did not have any valid legal objection to the Second Statement, but "was upset [Petitioner] gave [that] statement." *Id.* at 76:17–22; 77: 8–9.

The PCR court found not credible Petitioner's testimony that counsel never advised him not to talk with law enforcement, but found counsel's testimony to be credible. [ECF No. 17-10 at 84, 101]. The PCR court's factual findings are based, in part, on its assessment that Petitioner's testimony was not credible, while counsel's testimony was credible. The PCR court's credibility determination is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's

error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Petitioner has shown no cause to discount the PCR court's credibility determination and the undersigned can find no basis in the record on which to overturn the state court decision.

The undersigned finds the state courts did not err in finding that counsel's performance was not deficient concerning his advice to Petitioner in Ground Two. Further, any alleged deficiency did not result in prejudice, as Petitioner made the independent and voluntary decision to contact Investigator McDaniel and give the confession without counsel's knowledge in an effort "To clear my conscience, and to get all of these crimes off my chest." *Id.* at 33. Prior to the start of the interview, Petitioner was specifically advised of his right to have counsel present, but voluntarily waived that right in writing. *Id.* at 32. "A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with police unassisted." *Davis v. United States*, 512 U.S. 452, 461 (1994); *see also State v. Binney*, 608 S.E.2d 418 (S.C. 2005) (holding that a criminal suspect's rights are not violated when the suspect, not the police, initiate further communication, exchanges or conversations with the police). The constitutional right to request the presence of an attorney belongs solely to the defendant

and may not be asserted by his lawyer. *E.g.*, *Moran v. Burbine*, 475 U.S. 412, 418 (1986).

Independently, Petitioner has failed to show how his Ground Two claim affected the advice given concerning the guilty plea and waiver of the right to trial. Petitioner waived his right to challenge the evidence presented at trial at his guilty plea.

> 3.    Ground Three

In Ground Three, Petitioner argues the state erred in denying his ineffective assistance of counsel PCR claim because trial counsel failed to explain to him: (1) the procedural opportunities available to challenge the admissibility of his statements; and 2) the right to appeal of any unsuccessful attack on the admissibility of his statements.   At PCR, when asked whether he advised Petitioner about the procedures available at trial to challenge the admissibility of the statements, plea counsel stated as follows:

Q:    Did you discuss with him the fact that if he went to trial he could challenge the admissibility of the September 12th statement in an in-camera proceeding called a *Jackson v. Denno* hearing at trial?

A:    I believe I did. I can't say for certain.

Q:    And do you have any recollection of also telling him that if the presiding judge ruled against him on that issue, that on the question of confessions, the jury would also be instructed that they had a predicate obligation to find that the statements were knowing and voluntarily entered in compliance with proper procedures before considering it for guilt or innocence?

A:    I believe I did.

Q:    Okay. And would you—or do you recall also advising him that in the event he were convicted, with the state having been successful in using his statement from September 12th, that he would have had the opportunity to appeal to a higher court the judgment of the trial court concerning the admissibility of that statement under the circumstances in which it was given?

A:     Yes, ma'am.

[ECF No. 17-9 at 53–54].

Q:     And I just want to make sure I didn't write this down wrong. The Applicant was aware that he would have the ability, if he went to trial, to challenge his statements?

A:     Yes, we discussed that.

Q:     Even though Judge Cooper may not have mentioned that in the plea, you had discussed that with him?

A:     We discussed that in detail because after he gave those statements, I was upset he gave those statements. We talked about that, that specific statement that he gave Investigator McDaniel.

*Id.* at 76–77.

      The undersigned finds the PCR court did not err in finding counsel was not ineffective in advising Petitioner of the ability to challenge his statements to law enforcement at trial and the ability to appeal any adverse ruling on those challenges. Specifically, counsel testified he and Petitioner discussed the ability to challenge Petitioner's statements at trial, and more notably had "discussed . . . in detail" the ability to challenge the "specific statement that [Petitioner] gave Investigator McDaniel" on September 12, 2003. *Id.* at 76:23–77:10]. Petitioner testified counsel never discussed the ability to challenge the admission of his statements at trial, nor the ability to appeal an adverse ruling on the challenge. *Id.* at 105: 22–106: 23.

      The PCR court found Petitioner's testimony to be not credible. [ECF No. 17-10 at 84]. Counsel's credible testimony alone is sufficient evidence of probative value to support the PCR court's finding that counsel was not ineffective.

As the PCR court correctly noted, any alleged deficiency resulted in no prejudice, as Petitioner presented no credible evidence that, but for counsel's allegedly deficient advice, Petitioner would not have pled guilty. As Respondent notes, based on the record, Petitioner potentially faced life without parole numerous times under S.C. Code Ann. § 17-25-45(a) due to the independent nature of the charges, or several hundred years if sentenced consecutively on each charge in the two counties. Additionally, Petitioner had given full confessions to police investigators on all of the charges and would have been subjected to the state's presentation of testimony from his codefendants at trial.

4.     Ground Four

In Ground Four, Petitioner argues the state erred in denying his ineffective assistance of counsel PCR claim because trial counsel (1) failed to fully advise him of the function of the grand jury and the consequences of waiving his right to grand jury presentment on all charges and (2) failed to advise him why the state wanted to amend his waiver of grand jury presentment on one count of armed robbery during his sentencing proceeding allowing the amendment requested without his express consent.

Respondent argues that the PCR court correctly found that counsel was not ineffective in advising Petitioner of the function of the grand jury and consequences of waiving presentment of an indictment, or in advising Petitioner of the state's reasoning for amending the charge set forth in one of the waived indictments.

On November 21, 2003, Petitioner appeared before the plea court where he orally and in writing waived presentment to the grand jury on 12 counts of armed robbery and one

count of kidnapping. On January 21, 2004, Petitioner appeared before the plea judge to enter additional guilty pleas and be sentenced on both sets of pleas. At the start of the hearing, the state noted that it wished to amend one of the indictments to reduce one of Petitioner's armed robbery charges to the lesser attempted armed robbery. [ECF No. 17-7 at 20:12–13]. During the presentation of the facts giving rise to the charges, the solicitor noted that the indictment had been amended to reflect attempted armed robbery rather than armed robbery because, in that particular instance, Petitioner and codefendant were "spooked" during their robbery attempt and fled the scene without taking any money from the business or victims. *Id.* at 35:24–36:17.

At the PCR hearing, Petitioner testified he believed his waiver of presentment to the grand jury meant he was waiving his right to jury trial and, had he known he was facing only 11 armed robberies rather than 12 at the initial plea, he "would have definitely considered other options." [ECF No. 17-9 at 95:12–96:20]. Petitioner further said he was never given the option of whether to agree to the amendment, but conceded he did in fact sign the waiver sheet. *Id.* at 93:23–94:6. Counsel testified he "[didn't] think [Petitioner]" had a problem with the solicitor amending the indictment at the hearing and noting the record did not reflect that he had posed any objection to the amendment. *Id.* at 67: 9–14. He noted he "remember[ed] having discussions with [the solicitor] about" the amendment prior to the plea, but was unable to give any additional specifics as to his discussions with Petitioner. *Id.* at 66: 20–21.

The undersigned's review of the record refutes Petitioner's claim that he was not aware of the function of a grand jury or the consequences of waiving presentment to the grand jury. The plea judge specifically advised Petitioner of the function of a grand jury at both his November 2003 and January 2004 plea hearings; both times, Petitioner recognized that he understood his right to have the charges presented to the grand jury and said he wanted to waive that right. Specifically, as to the Richland County charges, the following colloquy occurred:

The Court:     Mr. Dessausure, some of these charges have not been indicted by the Grand Jury of Richland County. Have you advised your client of his right to have these charges presented to the Grand Jury?

Dessausure:     Yes, I have, Your Honor.

The Court:     Mr. Pressley, I see in looking through these indictments that several of them have not been submitted to the Grand Jury of Richland County. Do you understand that?

Defendant:     Yes, sir.

The Court:     I want to advise you, sir, that you have the Constitutional right to have the Grand Jury review and act on your charges. The Grand Jury would have to answer two questions: First, whether or not a crime has been committed and, second, whether or not you did it. If they answer both questions yes, they would submit these indictments as true bills. If they answered either question no, they would sign the indictment no bill. No bills would mean that the charges against you would be dismissed. The true bills is the process that gives this court the right, the authority and the jurisdiction to handle and resolve your case regardless of what the outcome may be. Do you understand your right to have several of these charges presented -- well, I'm not sure how many, but I'll go through them, these charges presented to the Grand Jury? Do you understand that?

Defendant:     Yes, sir.

The Court:     Do you want to waive that right and proceed here today?

Defendant:     Yes, sir.

The Court:     So you're willing to waive your right to have these charges presented to the Grand Jury?

Defendant:     Yes, sir.

[ECF No. 17-7 at 12–14] (November 21, 2003 Guilty Plea).

As to the Lexington County charges, the following colloquy occurred:

The Court:     Mr. Presley, as to the Lexington County charges, I want you to understand, I need to make this on the record; you have a Constitutional right to have the Grand Jury of Lexington County review and act on your charges. The Grand Jury would have to answer two questions: First, whether or not a crime has been committed; and, if so, whether or not you did it. If the answer to both questions is yes, they sign your indictment true bill. If they answer either question no, they would sign your indictments no bill. No bill would mean that the charges against you would be dismissed. A true bill is the process that gives this court the right, the authority andthe jurisdiction to hear your case and resolve your case regardless of what the outcome may be. Do you understand your rights to have these charges presented to the Grand Jury?

Defendant:     Yes, sir.

The Court:     Do you want to waive that right and proceed here today, or do you want me to send your charges to the Grand Jury?

Defendant:     I would like to waive it.

The Court:     All right, sir. I find the defendant's decision to waive his right to Grand Jury presentment to be freely, voluntarily and intelligently made.

[ECF No. 17-7 at 29–30] (January 21, 2004 Guilty Plea).

The court notes that "statements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to

depart from the truth of his statements." *Dalton v. State*, 654 S.E.2d 870 (S.C. Ct. App. 2007) (citing *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975)).

Petitioner acknowledged at the PCR hearing he had signed the waiver of presentment for the amended charge, which appears in the record to have set forth the charge as attempted armed robbery. [ECF No. 17-9 at 94:5; 17-8 at 98]. Additionally, the record reflects Petitioner also signed the sentencing sheet indicating he was waiving presentment of the charge to the grand jury and pleading guilty to attempted armed robbery. [ECF No. 17-8 at 97].

Further, the record refutes Petitioner's contention that he was "unaware" of the state's reasoning for amending the charge, as the solicitor told the plea court, "[sjomething spooked [Petitioner and codefendant] and they ended up taking off without getting any money . . . [a]nd that is why we've amended that [charge] down to an attempted armed robbery." [ECF No. 17-7 at 36:13–17].

Petitioner's charge was reduced to a lesser, not greater, crime through the amendment. Had Petitioner believed the amendment was improper and decided not to plead guilty to the charge, there was no impediment to the state's amending the indictment at the start of the trial to reflect the charge of attempted armed robbery. Specifically, "[a]n indictment may be amended if: (1) it does not change the nature of the offense; (2) the amended charges is a lesser included offense of the original crime charged in the indictment; or (3) the defendant waives presentment to the grand jury and pleads guilty."

28

*State v. Fonseca*, 681 S.E.2d 1, 4 (S.C. Ct. App. 2009), *citing State v. Myers*, 438 S.E.2d 236, 237 (S.C. 1993).

Therefore, even were Petitioner to have had no knowledge of the state's reason for the amendment, there is no reasonable probability that he would not have pled had counsel explained to him the circumstances surrounding the amendment.

> 5. Ground Five

In Ground Five, Petitioner argues the state erred in denying his ineffective assistance of counsel PCR claim because counsel failed to properly advise him that he would not be parole eligible under any circumstances if he pleaded guilty to the charges against him. At PCR, Petitioner testified he did not understand that his guilty pleas would make him ineligible for parole and he would have attempted to withdraw his pleas if he had been so informed. [ECF No. 17-9 at 110: 23–111:12].

Respondent argues the PCR court correctly found that counsel was not ineffective in advising Petitioner of the parole eligibility consequences of entering the guilty pleas. At the PCR hearing, counsel testified there was "no question at all" that the charges which Petitioner was facing (armed robbery, kidnapping and burglary first degree) were all charges for which "parole had been abolished in South Carolina" well before Petitioner's plea. *Id*. at 56:18–57:9. Counsel said he "certainly" advised Petitioner prior to the plea that "there would be no opportunity for parole eligibility on any" of the sentences he received as a result of the plea. *Id.* at 57:11–18. Counsel said he was "sure [they] talked about that information . . . because of the seriousness of the charges and multitude of the charges,"

noting they did so "in detail." *Id.* at 58:16–25. Counsel testified he was not surprised Petitioner asked the judge for parole eligibility at his plea hearing because "a lot of defendants do that" and he "took that as [Petitioner] asking for leniency or mercy in any way, shape or form." *Id.* at 59:1–17. Counsel stated he never had any reason to question Petitioner's intelligence, as he believed Petitioner "is a very articulate, intelligent young man," a belief he noted both at the PCR hearing and plea hearing. [ECF No. 17-7 at 65:21–23; 76:13–16].

In its Supplemental Order, the PCR court found plea counsel was not ineffective, as he "certainly explained to the [Petitioner] that he would not be parole eligible if he pleaded guilty to the charges against him," and noted there is no requirement plea counsel advise a defendant of parole eligibility prior to the entry of a plea. The guilty plea transcript also reflects counsel specifically noting he had explained to Petitioner the "no parole" nature of the offenses to which he was pleading. [ECF No. 17-9 at 76:15–16]. After counsel's mitigation presentation. Petitioner was given the opportunity to address the plea court directly, but at no time voiced any concerns or confusion about counsel's prior statement referencing "no parole" eligibility. [ECF No. 17-7 at 75:25–78:15].

Petitioner contends counsel informing him of 85% service of a sentence did not amount to advice on "no parole" eligibility. Specifically, Petitioner said, counsel was deficient for not informing him that he would be required to serve a minimum of 85% of his sentence without any possibility of parole before that time. Respondent argues under South Carolina law, "an inmate convicted of a 'no parole offense' as defined in Section

24-13-100 and sentenced to the custody of the Department of Corrections, is not eligible for early release . . . until the inmate has served at least eighty-five percent of the actual term of imprisonment imposed." S.C. Code Ann. § 24-13-125.

Petitioner cannot show the state court unreasonably applied federal law in denying relief on this claim of ineffective assistance of counsel or made an unreasonable determination of the facts in denying relief on this claim. The PCR court properly rejected Petitioner's claims where there was no evidence to support relief based on the alleged constitutional violations. As the PCR court's determinations were based on reasonable findings of facts and application of federal law, Petitioner cannot establish he is entitled to federal habeas relief under 28 U.S.C. § 2254(d), and the undersigned recommends this claim be denied and dismissed with prejudice.

## IV.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [ECF No. 18] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 27, 2015                                          Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).